# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DONALD POWERS,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:08cv00017 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Donald Powers, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2008).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).  This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B).  As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

-1-

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Powers filed his application for SSI on September 13, 2005, alleging disability beginning July 15, 2001, due to back, knee and thyroid problems, panic attacks, hepatitis B and agoraphobia. (Record, ("R."), at 65-70, 84, 56.) The claim was denied initially and on reconsideration. (R. at 36-40, 43, 44-46.) Powers then requested a hearing before an Administrative Law Judge, ("ALJ"). (R. at 48.) The ALJ held a hearing on April 11, 2007, at which Powers was represented by counsel. (R. at 592-621.)

By decision dated June 26, 2007, the ALJ denied Powers's claim. (R. at 16-31.) The ALJ found that Powers had not engaged in any substantial gainful activity since his alleged onset date. (R. at 18.) The ALJ found that the medical evidence established that Powers had severe impairments, namely arthritis/degenerative joint disease, a history of hepatitis B and an anxiety-related disorder, but he found that Powers did not have an impairment or combination of impairments that met or medically equaled the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-26.) The ALJ found that Powers's allegations regarding his limitations were not credible. (R. at 29-30.) The ALJ also found that

Powers had the residual functional capacity to perform medium work[1] with moderate limitations in his ability to work in coordination with or proximity to others without being distracted by them and to interact appropriately with the general public, co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 26.) Based on Powers's residual functional capacity and the testimony of a vocational expert, the ALJ found that Powers was capable of performing his past relevant work as a paving machine operator. (R. at 30-31.) Therefore, the ALJ found that Power was not under a disability as defined in the Act at any time through the date of his decision, and that he was not eligible for benefits. (R. at 31.) *See* 20 C.F.R. § 416.920(f) (2008).

After the ALJ issued his decision, Powers pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 6-9.) Powers then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2008). The case is before this court on Powers's Motion for Summary Judgment filed September 19, 2008, and the Commissioner's Motion for Summary Judgment filed October 15, 2008.

## *II. Facts*

Powers was born in 1971, (R. at 65, 598), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c) (2008). He has obtained his general

---

[1]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 416.967(c) (2008).

equivalency development, ("GED"), diploma. (R. at 89, 598.) He has past relevant work experience as a painter and working for a paving company. (R. at 599, 611.) Powers testified that he was incarcerated from August 2003 to September 9, 2005, for manufacturing counterfeit money. (R. at 606-07.)

At his hearing, Powers testified that he suffered from constant lower back pain. (R. at 599.) Powers also complained of problems with his knees, arms and hands. (R. at 600-03.) Powers also testified that he suffered from anxiety with panic attacks. (R. at 604.) He described the panic attacks as episodes where his chest would start pounding, he became confused and felt as if he was going to die. (R. at 604.) He stated that he suffered from panic attacks once or twice a week. (R. at 604.)

Bonnie Martindale, a vocational expert, also was present and testified at Powers's hearing. (R. at 612-19.) Martindale testified that Powers's work as a paving machine operator was medium and skilled. (R. at 614.) Martindale testified that Powers's work as a painter was classified as medium, skilled work, but, as performed by Powers, it would be heavy work.[2] (R. at 614.) Martindale also testified that moderate limitations in ability to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes would not preclude the performance of Powers's past relevant work. (R. at 615-16.)

─────────────

[2]Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds. If an individual can do heavy work, he also can do sedentary, light and medium work. *See* 20 C.F.R. § 416.927(d) (2008).

-4-

In rendering his decision, the ALJ reviewed records from the Federal Bureau of Prisons; Dr. Wayne T. Hutchinson, M.D.; Bedford Memorial Hospital; Dr. Shawn B. Clark, M.D.; Jerome S. Nichols, Ph.D., a psychologist; Dr. David C. Williams, M.D., a state agency physician; Eric Oritt, Ph.D, a state agency psychologist; Central Virginia Community Services; Dr. Robert O. McGuffin, M.D., a state agency physician; Robert White, M.Ed.; Marvin A. Gardner Jr., Ph.D.; University of Virginia, ("UVA"), Health System; Julie Jennings, Ph.D., a state agency psychologist; New London Family Practice; Carilion Roanoke Hospital; Lynchburg General Hospital; Dr. Richard F. Stowers Jr., M.D.; and Dr. Kenneth Hite, M.D. Powers's attorney submitted additional records from the UVA Health System, Lynchburg General Hospital and Dr. Stowers to the Appeals Council.[3]

Powers was seen at the emergency room at Carilion Roanoke Memorial Hospital on April 22, 2002, for complaints of severe back pain. (R. at 449-53.) Powers stated that he had injured his back two weeks previously while moving a copier. (R. at 451.) Straight leg raises were negative. (R. at 452.) X-rays of the lumbar spine showed only some degenerative narrowing of the L3-4 and the L5-S1 disc spaces. (R. at 453.) Powers was diagnosed with a back injury with a possible herniated disc. (R. at 452.) Powers was given a Dilaudid injection and prescriptions for Tylox and Skelaxin. (R. at 449, 451.) He was advised to follow up with his primary care physician. (R. at 449, 452.)

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Medical records from the Federal Bureau of Prisons show that Powers was evaluated and treated for complaints of chronic left knee and back pain, hepatitis B, hypothyroidism and panic disorder while incarcerated at the United States Penitentiary Pollock, ("USP Pollock"), in Louisiana. (R. at 170-73, 175, 186-87, 197, 202, 205, 207, 211, 222-24, 230-35, 238-40, 242, 244-47, 251-53.)  An x-ray of Powers's lumbar spine taken February 9, 2004, showed chronic disc space narrowing at the L4-5 and L5-S1 levels with a slight degree of rotoscoliosis. (R. at 173.) An MRI of Powers's lumbar spine taken on May 27, 2004, showed no large or focal disc herniations and degenerative disc disease with dehydration of the lower lumbar discs, with the most severe degenerative change being at the L4-5 level. (R. at 172.)  On June 17, 2004, Powers complained that it was difficult for him to perform his job in the electric shop due to back pain. (R. at 224.) In particular, he stated that it was difficult for him to stand for 15 minutes at a time. (R. at 224.) Powers's complaints of back pain and left knee pain were treated conservatively with Tylenol. (R. at 201, 205, 225, 232, 245-46.) On December 9, 2004, a back brace was issued to Powers. (R. at 199, 276.) On June 24, 2004, a knee brace was issued to Powers. (R. at 281.)

On May 18, 2005, Powers was seen for a orthopedic consultation.[4] (R. at 269.) Powers complained of suffering from chronic back pain, which was aggravated by prolonged sitting or walking, since the age of 18. (R. at 269.)  The physician recommended that Powers undergo nerve conduction studies of his lower extremities and that he be prescribed Mobic and Neurontin. (R. at 269.)

---

[4]The name of the physician who examined Powers is not legible on the report. (R. at 269.) Much of the physician's note is not legible as well.

-6-

On September 2, 2005, Powers complained of feeling like he had the flu. (R. at 179.) Based on his jaundiced appearance, Powers was transferred from USP Pollock to a local hospital to be evaluated for hepatitis. (R. at 179, 254.) A blood test taken September 7, 2005, indicated that Powers suffered from hepatitis B. (R. at 313.)

Upon Powers's incarceration in 2003, he also requested a psychiatric evaluation. (R. at 296.) In particular, Powers complained of suffering from anxiety for the previous seven to eight years. (R. at 296.) Powers stated that he developed anxiety when he was last released from prison. (R. at 296.) He stated that he became anxious around others and avoided going into crowds. (R. at 296.)

On January 27, 2004, Powers was seen by Dr. Richard Senyszyn, M.D., a psychiatrist at USP Pollock. (R. at 298-99.) Dr. Senyszyn reported that Powers appeared very anxious and was wringing his hands during his interview. (R. at 299.) Dr. Senyszyn noted that Powers was oriented with his memory intact with no hallucinations, paranoia or delusions. (R. at 299.) Powers stated that he had become nervous and upset when he learned that his release date was not until 2005. (R. at 298.) He complained of anxiety attacks twice a week with a racing heart, shortness of breath and a feeling of needing to escape. (R. at 298.) Powers gave a long history of alcohol and drug abuse, including use of marijuana, cocaine and LSD. (R. at 299.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 299.) Dr. Senyszyn stated that Powers's Global Assessment of Functioning, ("GAF"), score was 48.[5] (R.

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32

at 299.) He prescribed Remeron for Powers's symptoms. (R. at 299.)

On April 22, 2004, Powers saw Dr. Senyszyn. (R. at 234.) Powers stated that the Remeron has helped initially, but was then making him more nervous. (R. at 234.) Powers complained of having panic attacks two to three times a day. (R. at 234.). Dr. Senyszyn discontinued Powers's Remeron and prescribed Prozac instead. (R. at 234.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 234.) Dr. Senyszyn stated that Powers's GAF score was 48. (R. at 234.)

On June 10, 2004, Powers saw Dr. Senyszyn. (R. at 223.) Powers stated that he had discontinued taking Prozac because it kept him awake at night and left him numb to his emotions. (R. at 223.) Powers complained of feeling anxious all of the time and having panic attacks about four times a week. (R. at 223.) Dr. Senyszyn discontinued Powers's Prozac and prescribed Doxepin instead. (R. at 223.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 211.) Dr. Senyszyn stated that Powers's GAF score was 48. (R. at 211.)

On August 26, 2004, Powers again saw Dr. Senyszyn. (R. at 211.) Powers described his condition as "fair." (R. at 211.) He said that his panic attacks were not lasting as long, although they were occurring a few times a day. (R. at 211.) Dr. Senyszyn discontinued Powers's Doxepin and prescribed Elavil instead. (R. at 211.)

_____

(American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "serious symptoms ... OR any  serious impairment in social, occupational, or school functioning."  DSM-IV at 32.

Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 211.) Dr. Senyszyn stated that Powers's GAF score was 48. (R. at 211.)

On September 21, 2004, Powers saw Dr. Senyszyn. (R. at 207.) Powers stated that he was "[b]etter" and was not having any panic attacks. (R. at 207.) Powers stated that he was dealing better around others, but he was still avoiding crowds. (R. at 207.) Dr. Senyszyn increased Powers's Elavil level. (R. at 207.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 207.) Dr. Senyszyn stated that Powers's GAF score was 53.[6] (R. at 207.)

On October 26, 2004, Powers again saw Dr. Senyszyn. (R. at 202.) Powers stated he was doing "[s]o, so" with an overall feeling of anxiety. (R. at 202.) Powers said that his panic attacks and back pain were better on Elavil. (R. at 202.) Powers complained of one to two panic attacks a week. (R. at 202.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 202.) Dr. Senyszyn stated that Powers's GAF score was 53. (R. at 202.) Dr. Senyszyn increased Powers's dosage of Elavil. (R. at 202.)

On December 14, 2004, Powers saw Dr. Senyszyn. (R. at 197.) Powers reported that he was doing "[s]omewhat better" as long as he avoided crowds. (R. at 197.) Powers complained of suffering from one severe panic attack a week, with confusion,

---

[6]A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

heart racing and sweating when around crowds. (R. at 197.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 197.) Dr. Senyszyn stated that Powers's GAF score was 53. (R. at 197.) He continued Powers on Elavil for his symptoms. (R. at 197.)

On February 28, 2005, a Medical/Psychological Pre-Release Evaluation of Powers's condition was completed. (R. at 310.) According to M. Hughes, Psy.D., Powers's mental health problems were under control with medication, but Powers would need follow-up care and supervision. (R. at 310.) According to this evaluation,[7] Powers's chronic back pain was a significant medical disorder, but was under good control and required follow-up care. (R. at 310.)

On March 10, 2005, Powers told Dr. Senyszyn that he was doing "[a]lright." (R. at 273.) Powers reported that his back pain was better on Elavil. (R. at 273.) Powers complained of suffering from three to four panic attacks a week, with the worst part lasting only 10 minutes. (R. at 273.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 273.) Dr. Senyszyn stated that Powers's GAF score was 56. (R. at 273.) He continued Powers on Elavil for his symptoms. (R. at 273.)

On July 19, 2005, Powers told Dr. Senyszyn that there was no change in his condition. (R. at 268.) Powers complained of suffering from two to three panic attacks a week, with each lasting about 15 minutes. (R. at 268.) Dr. Senyszyn noted that

---

[7]The name of the medical provider who completed the Medical Status section is not legible. (R. at 310.)

Powers did not appear anxious. (R. at 268.) Dr. Senyszyn diagnosed Powers with panic disorder with agoraphobia, a probable generalized anxiety disorder and polysubstance abuse. (R. at 268.) Dr. Senyszyn stated that Powers's GAF score was 56. (R. at 268.) He increased Powers's dosage of Elavil. (R. at 268.)

Prior to his release from prison, Powers last saw Dr. Senyszyn on August 9, 2005. (R. at 266.) On that date, Powers complained of sleeping only three hours a night. (R. at 266.) Powers stated that he suffered from two panic attacks a week, lasting from 30 to 40 minutes each. (R. at 266.) Powers stated that the Elavil he was taking helped with his back pain and with sleeping. (R. at 266.) Dr. Senyszyn reduced Powers's Elavil dosage and educated him about mental health resources available after his release. (R. at 266.)

After his release from prison, Powers saw Dr. Wayne T. Hutchison, M.D., with Physician Associates of Bedford on September 15, 2005. (R. at 342.) Powers's chief complaint was of back pain for the previous several years as a result of a motor vehicle accident. (R. at 342.) Dr. Hutchison also noted that Powers had been diagnosed with panic disorder with agoraphobia, hypothyroidism, hepatitis B and polysubstance abuse. (R. at 342-44.) Dr. Hutchison noted that an examination of Powers's back revealed that it had lost its normal lordotic curve with no palpable muscle spasm. (R. at 343.) Straight leg raises were positive for back pain only on the right and left with pain at about 45 degrees. (R. at 343.) Powers complained of occasional pain radiating down his back into both legs down to the knees. (R. at 343.) Dr. Hutchison noted some tenderness to palpation over the lower lumbar spinous processes as well as the left and right paravertebral muscles. (R. at 343.) Dr.

-11-

Hutchison prescribed Mobic and Neurontin for Powers's complaints of back pain. (R. at 344.)

Powers also sought treatment for back pain on a number of occasions at hospital emergency rooms. For instance, on September 18, 2005, Powers sought treatment at the emergency department of Lynchburg General Hospital for complaints of worsening back pain radiating into his left leg after moving furniture. (R. at 505-10.) Powers had decreased range of motion with muscle spasms in his back. (R. at 508.) Left straight leg raise was positive for pain at 30 degrees. (R. at 508.) Powers was diagnosed with chronic back pain and was given prescriptions for Darvon and Flexeril. (R. at 508.)

On October 6, 2005, Powers sought treatment for sharp back pain radiating into his left hip at Bedford Memorial Hospital. (R. at 346-50.) Powers complained of pain at a 10 on a 10-point scale. (R. at 346.) Powers gave a history of chronic back pain and stated that he was "moving things around" which he believed irritated his back pain. (R. at 346.) Dr. Erin Dove, M.D., noted that Powers stated that he had been diagnosed with am annular tear from a year previously, for which surgery had been recommended. (R. at 348.) There is no mention of Powers's prior substance abuse problems. (R. at 348.) Dr. Dove gave Powers a Toradol injection and prescriptions for Lortab and Flexeril. (R. at 348.)

An MRI was performed of Powers's lumbar spine on October 10, 2005. (R. at 351.) The MRI revealed a small to moderate left paracentral disc protrusion at the L5-S1 level and a small broad-based disc protrusion on the left at the L4-5 level. (R. at

-12-

351.)

Powers saw Dr. Shawn B. Clark, M.D., on October 18, 2005, with a chief complaint of low back and left buttock pain. (R. at 352-53.) Powers told Dr. Clark that there was no "antecedent event" and that his pain began spontaneously two years previously and had grown progressively worse. (R. at 252.) Powers stated that the pain occasionally radiated into his left posterior thigh with occasional numbness beneath the knee. (R. at 252.) Powers also stated that activity "somewhat exacerbated" his pain and that it was relieved somewhat by complete rest. (R. at 352.) Powers stated that he had taken over-the-counter medications as well as Lortab for his complaints of pain. (R. at 352.)

Dr. Clark noted that Powers walked with a limp to the left. (R. at 352.) Dr. Clark stated that Powers's strength, reflexes and sensation were normal in his lower extremities. (R. at 352.) Straight leg raise on the left produced buttock pain at 30 degrees and on the right at 90 degrees. (R. at 352.) Dr. Clark noted that the MRI of Powers's lumbar spine showed a broad-based to left paramedian disc bulge at the L4-5 and L5-S1 levels. (R. at 353.) He also noted a central disc bulge at the L3-4 level. (R. at 353.) Dr. Clark stated that, while there was no significant foraminal stenosis at any level, there might be some left lateral recess stenosis at the L4-5 and L5-S1 levels. (R. at 353.) Dr. Clark diagnosed "lumbar disc bulging, somewhat premature for age, with some end-plate hyperemia but no frank nerve root compression or neurologic deficits." (R. at 353.) Dr. Clark did not foresee any surgical intervention and prescribed a Medrol Dosepak. (R. at 353.)

Powers was evaluated by Robert White, M.Ed, a therapist with Bedford Counseling Center of Central Virginia Community Services, ("CVCS"), on November 29, 2005. (R. at 444-46.) White noted that Powers's eye contact was extremely poor and that he was constantly fidgeting throughout the interview. (R. at 444.) Powers reported feeling anxious and suffering from panic attacks. (R. at 444.) Powers stated that he was on probation and was scared to leave his home because he might violate his probation. (R. at 444.) Powers said he was extremely uncomfortable when not at home, but when he was at home, he paced constantly. (R. at 444.)

White diagnosed Powers as suffering from panic disorder with agoraphobia and general anxiety disorder. (R. at 444.) White also stated that Powers previously had suffered from alcohol, cannabis and cocaine dependence, all of which were in full remission by Powers's report. (R. at 445.) Powers requested Elavil, but White noted that the staff psychiatrist would be hesitant to prescribe benzodiazepine medication to a person with a past substance abuse history. (R. at 445.)

On December 1, 2005, Dr. David C. Williams, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment of Powers. (R. at 354-59.) Dr. Williams's assessment was based, in part, on his review of the reports from Dr. Clark's October 18, 2005, examination and Dr. Dove's October 6, 2005, examination. (R. at 359.) Dr. Williams stated that Powers could occasionally and frequently lift and carry items weighing up to 10 pounds. (R. at 355.) He stated that Powers could stand and/or walk at least two hours and sit about six hours in an eight-hour workday. (R. at 355.) Dr. Williams also stated that Powers could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 356.)

-14-

On December 11, 2005, Powers was treated for injuries to his face suffered in a fight. (R. at 496-99.)

Jerome S. Nichols, Ph.D. performed a psychological evaluation of Powers at the state agency's request on January 26, 2006. (R. at 360-63.) Nichols found no evidence of psychotic disorder. (R. at 361.) Powers described his mood as anxious and irritated. (R. at 361.) Powers gave a history of suffering from panic attacks, during which his heart would race, he would feel clammy and become confused and he would feel as if he were going to die. (R. at 361.) Powers reported that he suffered from a couple of these attacks a week and that the attacks would last for about an hour at a time. (R. at 361.) Nichols diagnosed Powers as suffering from a generalized anxiety disorder, panic disorder with agoraphobia and a personality disorder, not otherwise specified. (R. at 363.) Nichols stated that Powers was functioning in the average range of intelligence and that his prognosis was fair. (R. at 363.)

Nichols stated that Powers did not have a mental disorder that would interrupt a normal workday or workweek. (R. at 363.) He did state that Powers had moderate problems in interacting with co-workers and the public and in coping with the usual stressors encountered in competitive work. (R. at 363.) Nichols stated that Powers's attention and concentration did seem relatively good. (R. at 363.) Nichols placed Powers's then-current GAF score at 52. (R. at 363.)

Based on the psychological evidence of record, including Nichols's January 26, 2006, evaluation, Eric Oritt, Ph.D, a state agency psychologist, completed at Psychiatric Review Technique form, ("PRTF"), and Mental Residual Functional

-15-

Capacity Assessment on February 11, 2006. (R. at 364-79.) Oritt stated that Powers suffered from panic disorder with agoraphobia, a personality disorder, not otherwise specified, and a substance abuse disorder and polysubstance abuse. (R. at 372, 374, 375.) Oritt stated that these conditions resulted in marked difficulties in Powers's maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and mild restrictions of activities of daily living. (R. at 377.) Oritt stated that Powers was moderately limited in his ability to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to respond appropriately to changes in the work setting. (R. at 364-65.)

Oritt further stated that Powers would have moderate problems coping with the usual stressors encountered in competitive work. (R. at 366.) Despite this, Oritt stated that Powers was able to meet the basic mental demands of competitive work on a sustained basis despite any limitations resulting from his impairment. (R. at 366.)

On February 8, 2006, Powers was seen at the emergency department of Lynchburg General Hospital for complaints of right flank pain. (R. at 486.) Powers was diagnosed with a kidney stone. (R. at 486.) He was given Phenergan, Fentanyl, Toradol and morphine intravenously. (R. at 489.) He also was given a prescription for

-16-

Lortab. (R. at 490.)

On May 26, 2006, Powers was seen by Dr. H. Michael Guo, M.D., Ph.D., at the Pain Management Center at UVA. (R. at 416-18.) Powers reported gradually worsening lower back pain over the previous four years with no apparent injury. (R. at 416.) Powers stated that he suffered from a constant, sharp pain located in the midline of his lower back with radiation to the left side of his back and into the left buttock. (R. at 416.) He stated that bending, twisting, carrying weight and prolonged sitting, standing or lying down aggravated the pain. (R. at 416.) Powers complained of radicular pain into his left leg with no numbness, but with some intermittent weakness. (R. at 416.)

Physical examination revealed no lumbar tenderness. (R. at 417.) Straight leg raises, facet loading and Patrick's test[8] were all negative. (R. at 417.) However, Dr. Guo noted that Powers had questionable effort during his lower extremity strength tests. (R. at 417.) Dr. Guo's impression was that Powers suffered from chronic low back pain, probably caused by degenerative disc disease and an older L4-5 annular tear. (R. at 417.) Dr. Guo increased Powers's dosage of Neurontin. (R. at 417.) Dr. Guo stated that he did not believe it was appropriate to treat Powers's back pain with opiate medication. (R. at 418.)

On June 15, 2006, Dr. William Humphries, M.D., conducted an independent medical examination of Powers at the request of the state agency. (R. at 380-84.)

---

[8]Patrick's test involves the flexion, abduction and external rotation of the hip to determine if there is arthritis in the hip joint. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1688 (27th ed. 1994).

Powers told Dr. Humphries that he had suffered from pain in his low back for at least the previous four years and that the onset was not related to any particular injury. (R. at 380.) Dr. Humphries noted that the range of motion in Powers's back was moderately reduced without significant kyphosis. (R. at 381.) Dr. Humphries noted that there was no scoliosis or paravertebral muscle spasm in Powers's spine. (R. at 381.) Straight leg raise was negative to 90 degrees sitting bilaterally, except that knee pain was elicited on the left at about 70 degrees. (R. at 381.) Dr. Humphries noted that joint range of motion in Powers's shoulders and hips was slightly reduced due to pain in the lumbar region. (R. at 381.) Dr. Humphries noted normal strength and no motor or sensory loss in Powers's extremities. (R. at 382.) Dr. Humphries stated that Powers suffered from hypertension, hepatitis B by history, chronic lumbar strain and mild degenerative joint disease in both Powers's hands and feet. (R. at 383.)

Powers received individual counseling with White again on June 1 and 13, 2006. (R. at 389-90.) On June 1, Powers complained of excessive worrying, being afraid to leave his home and occasional panic attacks. (R. at 390.) Powers also reported suffering from severe back pain. (R. at 390.) White listed Powers's GAF score at 50 on both dates. (R. at 389-90.)

On June 28, 2006, Powers was seen at the emergency department of Lynchburg General Hospital for complaints of back pain. (R. at 470-73.) Powers complained of severe sharp pain in his lower back radiating into his left leg. (R. at 472.) Powers had decreased range of motion and muscle spasms in his back. (R. at 473.) Straight leg raises were positive for pain bilaterally at 30 degrees. (R. at 473.) Powers was given Demerol and Phenergan injections and a prescription for Percocet. (R. at 473.)

-18-

On July 11, 2006, Powers was seen by Dr. Huntington T. Hapworth, M.D., at the Pain Management Center at UVA. (R. at 413-14.) Powers reported improvement of his leg pain on Neurontin. (R. at 413.) He also reported that his back pain had worsened since no longer using Lortab. (R. at 413.) He reported having to go to the emergency room for pain on one occasion since discontinuing the use of Lortab. (R. at 413.) Powers denied receiving any narcotic pain medication from the emergency room physician. (R. at 413.)

He complained that his back pain was a constant, sharp, aching pain deep in his back. (R. at 413.) Powers stated that his leg pain was a pinching, electrical pain that radiated down to the posterior thigh into the mid proximal thigh posteriorly in the left leg. (R. at 413.) Powers also stated that there was a small area of radicular pain in the right leg that extended into the right buttock and proximal thigh posteriorly. (R. at 413.) Powers said his back pain started in his lower back, spread across his hips and radiated down the lateral portion of his hips. (R. at 413.) Powers complained of no numbness, weakness or bowel or bladder dysfunction. (R. at 413.)

Physical examination revealed tenderness to deep palpation in the bilateral paraspinal muscles in the lumbosacral area. (R. at 413.) There was normal bulk and tone of Powers's muscles. (R. at 413.) There was no muscle spasm, and straight leg raises were negative. (R. at 413.) Dr. Hapworth noted that facet loading maneuvers and Patrick's test were positive. (R. at 413.) He also stated that deep palpation of the sacroiliac, ("SI"), joint was markedly positive and tender. (R. at 413.)

-19-

Dr. Hapworth's impression was that Powers suffered from chronic low back pain with a predominant component of left SI joint arthralgia and possible left radicular symptomatology. (R. at 414.) Dr. Hapworth increased Powers's dosage of Neurontin and scheduled him for a left SI joint injection. (R. at 414.)

On July 12, 2006, Powers told Elizabeth Skinnell, a registered nurse with CVCS, that he was very anxious and that he could not "stand crowds." (R. at 386.) Powers said that he suffered from panic attacks with sweats and his heart racing. (R. at 386.) Powers also complained that he had trouble falling asleep and staying asleep. (R. at 386.) Powers also was seen by a psychiatrist with CVCS on July 12, 2006,[9] but the physician's note lists no diagnosis or treatment. (R. at 388.)

On July 12, 2006, Dr. Robert O. McGuffin, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment for Powers. (R. at 391-97.) Dr. McGuffin stated that Powers could occasionally lift and carry items weighing up to 50 pounds and frequently lift and carry items weighing up to 25 pounds. (R. at 392.) Dr. McGuffin stated that Powers could stand and/or walk and sit for about six hours in an eight-hour workday. (R. at 392.)

On July 20, 2006, Powers sought treatment at the Bedford Memorial Hospital emergency room complaining of lumbar back pain since bending over to load a dishwasher a few hours previously. (R. at 467-68.) Examination found Powers's strength and reflexes normal in his lower extremities. (R. at 467.) Powers was diagnosed with lumbar sprain, sciatica, radiculopathy and herniated disc. (R. at 467.)

---

[9]The name of the physician is not legible on the report. (R. at 388.)

Powers was given a prescription for Percocet and told to follow up with the UVA Pain Management Center. (R. at 467-68.)

On July 24, 2006, White completed a Mental Status Evaluation Form for Powers. (R.at 398-402.) White stated that he had seen Powers once or twice a month from November 29, 2005, through June 13, 2006. (R. at 398.) White listed Powers's diagnosis as panic disorder with agoraphobia. (R. at 398.) White noted that Powers had a history of problems with alcohol and marijuana, but had denied any use since 2001. (R. at 398.) White stated that Powers was extremely anxious. (R. at 400.) He stated that Powers's memory and judgment were fair. (R. at 400-01.) White noted that Powers's fund of information, attention span, concentration, persistence and task completion were poor. (R. at 401.) White stated that Powers was unable to function around others. (R. at 401.)

Powers returned to the Bedford Memorial Hospital emergency room complaining of abdominal pain in the right lower quadrant on August 10, 2006. (R. at 459.) Powers was diagnosed with colitis. (R. at 462.)

Marvin A. Gardner Jr., Ph.D., performed a psychological evaluation of Powers on August 16, 2006, at the request of the state agency. (R. at 403-08.) Gardner performed a diagnostic interview and mental status examination. (R. at 403.) Gardner also reviewed records of Powers's past psychological evaluations and treatment. (R. at 403.) Gardner noted that during the interview Powers's motor activity was rather agitated and he avoided eye contact. (R. at 404.) Powers stated that he had excess worry and was uncomfortable around crowds of people. (R. at 404.) Powers reported

performing very few chores at home, although he stated that he would help his mother clean the kitchen or wash his clothing. (R. at 404.) He stated that he was taking Lexapro and that it helped him to sleep. (R. at 404.)

Powers described his mood as anxious, and Gardner observed psychomotor agitation, with him exhibiting constant energy and fidgeting. (R. at 406.) Powers also complained of his thoughts racing, difficulty concentrating and being restless and on edge and irritable with muscle tension. (R. at 406.) He complained of suffering from two panic attacks a week with fast heartbeat, sweating, shaking, dizziness, feeling flushed and feelings of losing control or going crazy. (R. at 406.)

Gardner found that Powers had moderate difficulties with immediate recall and recent memory. (R. at 406.) He also found Powers's general information, concentration and judgment to be moderately impaired. (R. at 406-07.) Gardner stated that Powers did not put his full effort to responding to the questions on the mental status exam. (R. at 407.)

Despite Powers's difficulty with concentration, Gardner stated that Powers could perform detailed and complex work. (R. at 407.) Gardner stated that Powers could perform work on a consistent basis without any need for special or additional supervision. (R. at 407.) Gardner stated that, with continued medical treatment and counseling, Powers would be able to complete a normal workday and workweek without interruptions due to his psychiatric conditions. (R. at 407.) He did state that Powers would have moderate difficulty interacting with co-workers and the public and coping with usual work stress. (R. at 407.)

-22-

Gardner diagnosed Powers as suffering from a general anxiety disorder, panic disorder with agoraphobia and personality disorder not otherwise specified. (R. at 407.) He placed Powers's then-current GAF score at 55, with it being 51 within the previous year. (R. at 407.)

On August 21, 2006, Powers was seen by Dr. Jay Sleesman, M.D., at the Pain Management Center at UVA. (R. at 409-10.) Powers complained of pain in his lower back radiating into his left posterolateral thigh. (R. at 409.) Powers stated that a previous SI joint injection had given him relief for three days. (R. at 409.) Powers complained of increased pain with activity and difficulty sleeping at night. (R. at 409.) Examination revealed straight leg raise positive on the left. (R. at 409.) There was tenderness to palpation over Powers's lumbar back. (R. at 409.) Dr. Sleesman discontinued Powers's use of Neurontin, replacing it with topiramate and tizanidine. (R. at 409.) Dr. Sleesman prescribed physical therapy for Powers to learn core strengthening exercises and scheduled Powers for a SI joint injection. (R. at 410.)

Powers was seen at the Carilion Roanoke Memorial Hospital emergency department on August 26, 2006, complaining of back pain. (R. at 454-58.) The nurse noted that Powers was in no acute distress and no obvious discomfort. (R. at 456.) Powers reported suffering from severe, radiating left-sided lower back pain which began while having an injection. (R. at 456.) Powers was given Percocet and Valium and told to follow up with his primary care physician. (R. at 457.)

Julie Jennings, Ph.D., a state agency psychologist, completed a PRTF and a

-23-

Mental Residual Functional Capacity Assessment of Powers on August 28, 2006. (R. at 420-36.) Jennings completed her evaluation based on her review of the psychological evidence of record, including Gardner's August 18, 2006, evaluation. (R. at 436.) Jennings found that Powers suffered from a generalized anxiety disorder and a personality disorder, not otherwise specified, which resulted in moderate restrictions of activities of daily living and mild difficulties in maintaining social functioning. (R. at 425, 427, 430.)

Jennings stated that Powers was capable of working within a work schedule and at a consistent pace. (R. at 435.) Jennings stated that Powers was capable of making simple decisions and carrying out very short and simple instructions. (R. at 435.) Jennings stated that Powers was moderately limited in the ability to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 433-44.) Jennings stated that, despite the limitations placed on Powers based on his mental impairment, he could perform the basic mental demands of competitive work on a sustained basis. (R. at 435.)

Powers saw Dr. Richard F. Stowers Jr., M.D., on September 27, 2006, for complaints of low back pain. (R. at 439-40.) Powers reported suffering from low back pain since 2002. (R. at 439.) Powers stated that the pain was located in the central area of the lower portion of his back and radiated into his left leg. (R. at 439.) Powers reported that he had had two injections in his SI joint over the course of the previous six weeks at the UVA Pain Management Center. (R. at 439.) He also stated that he had

-24-

undergone a denervation procedure on three sites on his left side two days previously, with an increase in pain and intensity. (R. at 439.) Powers stated that the Pain Management Center had weaned him off his use of Lortab, but when they referred him to an emergency room for exacerbations of pain, the emergency room physicians had prescribed Lortab. (R. at 439.) Dr. Stowers gave Powers an additional prescription for Lortab to use "as needed for rescue pain only." (R. at 440.)

Powers returned to see Dr. Stowers on October 30, 2006. (R. at 438.) Dr. Stowers noted that Powers had been discharged by the Pain Management Center after his pain had not been responsive to SI joint injections or left-sided lumbar medial branch procedures. (R. at 438.) Dr. Stowers noted that Powers was walking "more or less crouched over" and that he was unable to stand up straight without complaining of pain. (R. at 438.) Dr. Stowers refilled Powers's Lortab prescription and noted that it should last him two months. (R. at 438.) He also noted that Powers was going to try to return to work. (R. at 438.)

Powers was seen at the emergency department at Lynchburg General Hospital for complaints of back pain on December 18, 2006. (R. at 574-81.) He was given injections of Dilaudid and Phenergan and told to follow up with his primary care physician. (R. at 577.) Powers returned to the emergency department at Lynchburg General Hospital for complaints of back pain on January 8, 2007. (R. at 566-73.) He was given an injection of Toradol. (R. at 573.)

Powers returned to see Dr. Stowers on January 18, 2007, with complaints of chronic pain across his low back and in his hips. (R. at 565.) Powers stated that the

-25-

pain was exacerbated when he was "on the job painting" and was not as bothersome when he was home resting. (R. at 565.) Powers stated that he would generally take one to two Lortab a day when he was working. (R. at 565.) Dr. Stowers noted that Powers had used 120 Lortab in little over six weeks. (R. at 565.)

On February 14, 2007, Dr. Stowers completed a Medical Report For General Relief, Medicaid And Temporary Assistance For Needy Families for Powers. (R. at 523.) Dr. Stowers stated that Powers suffered from chronic low back pain syndrome, hypertension and hepatitis B. (R. at 523.) Dr. Stowers indicated that Powers's condition rendered him unable to work or severely limited his capacity for self-support for 30 days or more from onset permanently. (R. at 523.) Dr. Stowers stated that Powers was restricted from repetitive bending or lifting. (R. at 523.)

Powers saw Dr. Stowers again on April 3, 2007. (R. at 563.) Powers complained of progressive pain, localized in his back with no pain in either leg and no weakness in either leg. (R. at 563.) Powers stated that he was unable to do any significant lifting or bending. (R. at 563.) Dr. Stowers noted guarded range of motion in Powers's lumbosacral spine. (R. at 563.) Straight leg raising test did not exacerbate his back pain. (R. at 563.) In response to a request to complete a physical capacity assessment, Dr. Stowers stated that he had no objective way to assess Powers's residual functional capacity. (R. at 563.) Dr. Stowers gave Powers a refill of his Lortab prescription. (R. at 563.)

Powers presented to the emergency department at Lynchburg General Hospital on the afternoon of April 17, 2007, complaining of numbness in his midsection. (R.

-26-

at 553.) The treating physician noted that Powers had presented to the emergency department the day before and earlier that morning complaining of lower back pain. (R. at 553.) He was given Flexeril, Prednisone and Ultracet on the earlier visits. (R. at 553.) Powers was given a Toradol injection. (R. at 559.)

A lumbar spine MRI was performed on Powers on April 23, 2007, at Lynchburg General Hospital. (R. at 526-27.) Multi-level degenerative changes were noted, with multi-level broad-based disc bulging. (R. at 527.) There was mild disc extrusion at the L1-2 disc space. (R. at 527.) There was no significant spinal canal narrowing throughout the lumbar spine, but there was multi-level neural foraminal narrowing, especially in the lumbar spine. (R. at 527.)

Powers saw Dr. Stowers again on July 2, 2007, for continued complaints of back pain. (R. at 545.) Dr. Stowers noted that Powers appeared uncomfortable. (R. at 545.) There was no demonstrable radicular quality, and straight leg raising tests were negative. (R. at 545.) Dr. Stowers refilled Powers's Lortab prescription and recommended that he receive a consultative evaluation by the UVA Neurosurgery Department. (R. at 545.)

On August 7, 2007, Powers was seen by Dr. Gregory A. Helm, M.D., Ph.D., with the UVA Department of Neurological Surgery. (R. at 543.) Dr. Helm stated that, on examination, Powers had good strength and sensation in his lower extremities. (R. at 543.) Straight leg raising tests were negative. (R. at 543.) Dr. Helm reviewed Powers's April 23, 2007, MRI and stated that it showed some mild degenerative changes. (R. at 543.) Dr. Helm recommended that Powers undergo some physical

-27-

therapy, and, if that did not work, a left-sided epidural injection. (R. at 543.)

On August 13, 2007, Powers was admitted for inpatient psychiatric treatment at Lynchburg General Hospital with complaints of increasing depressive symptoms with suicidal ideation. (R. at 539.) At the time of his admission, Powers reported that he had been feeling depressed for the previous "several months, possibly longer." (R. at 529.) He also reported severe depression for the previous eight months, with thoughts of suicide over the previous six months. (R. at 536.) Powers reported that his mood had deteriorated over the previous two months. (R. at 539.) Powers stated that he was suffering from crying spells and feeling helpless and hopeless. (R. at 539.) Powers said that his thoughts of suicide had increased to the point of where he "came close" to taking a gun and shooting himself. (R. at 539.) Powers was diagnosed as suffering from major depression, single episode, severe, without psychosis, and pain disorder. (R. at 541.) Powers's GAF score on admission was listed at 30.[10] (R. at 541.)

Powers was discharged on August 20, 2007, with a follow-up appointment scheduled with the Bedford Community Services Board on September 11, 2007. (R. at 528.) He was given prescriptions for Effexor, Seroquel and Atarax. (R. at 528.) By the time of Powers's discharge, it was noted that his mood had improved significantly to the point where he no longer felt helpless and hopeless. (R. at 529.)

On October 12, 2007, Powers was seen by Ian Marks, a physician's assistant

---

[10]A GAF of 30 indicates that the individual's behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or an inability to function in almost all areas. *See* DSM-IV at 32.

-28-

in the Orthopedics Department at UVA. (R. at 584-85.) Marks noted that Powers was referred for evaluation of constant, dull, achy back pain. (R. at 584.) Powers denied any radicular symptoms. (R. at 584.) Powers's strength, sensation and reflexes were without limitation in both lower extremities. (R. at 584.) Straight leg raising tests were negative, and there was no tenderness to palpation over his SI joint. (R. at 584.) Marks stated that Powers described what sounded like a diskogenic pattern of pain, which could be treated with disc replacement surgery, spinal fusion or nonsurgical care. (R. at 585.) Marks recommended facet injections, a diskogram and blood tests to screen Powers for rheumatoid arthritis or other inflammatory process. (R. at 585.) X-rays of Powers's lumbar spine taken on this date showed mild multi-level degenerative changes. (R. at 587.)

On November 15, 2007, Powers had a diskogram performed at UVA. (R. at 582-83.) The results showed posterior annular tearing with epidural leakage of the contrast at the L2-3, L3-4 and L4-5 disc levels. (R. at 582-83.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2008); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds

-29-

conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2008).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2008); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated June 26, 2007, the ALJ denied Powers's claim. (R. at 16-31.) The ALJ found that Powers had not engaged in any substantial gainful activity since his alleged onset date. (R. at 18.) The ALJ found that the medical evidence established that Powers had severe impairments, namely arthritis/degenerative joint disease, a history of hepatitis B and an anxiety-related disorder, but he found that Powers did not have an impairment or combination of impairments that met or medically equaled the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-26.) The ALJ found that Powers's allegations regarding his limitations were not credible. (R. at 29-30.) The ALJ also found that Powers had the residual functional capacity to perform medium work with moderate limitations in his ability to work in coordination with or proximity to others without being distracted by them and to interact appropriately with the general public, co-

-30-

workers or peers without distracting them or exhibiting behavioral extremes. (R. at 26.) Based on Powers's residual functional capacity and the testimony of a vocational expert, the ALJ found that Powers was capable of performing his past relevant work as a paving machine operator. (R. at 30-31.) Therefore, the ALJ found that Powers was not under a disability as defined in the Act at any time through the date of his decision, and that he was not eligible for benefits. (R. at 31.) *See* 20 C.F.R. § 416.920(f).

Powers argues that the ALJ's finding that he was capable of performing medium work with moderate limitations in his ability to work in coordination with or proximity to others without being distracted by them and to interact appropriately with the general public, co-workers or peers without distracting them or exhibiting behavioral extremes is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment), ("Plaintiff's Brief"), at 11-12.) Specifically, Powers challenges the ALJ's finding as to both his physical and mental residual functional capacity. (Plaintiff's Brief at 11-12.) For the following reasons, I find that substantial evidence does not support the ALJ's finding as to Powers's physical or mental residual functional capacity.

The ALJ found that Powers suffered from only three severe impairments: arthritis/degenerative joint disease, a history of hepatitis B and an anxiety-related disorder. (R. at 18.) In particular, the ALJ found that Powers's depression imposed no functional limitations. (R. at 18.) This finding is significant in light of the fact that it does not appear that any mental health professional had diagnosed Powers as suffering from depression prior to August 13, 2007. (R. at 541.) Instead, Powers had

-31-

consistently been diagnosed as suffering from an anxiety-related disorder. Nonetheless, Powers also consistently has been prescribed antidepressants, including Prozac, Elavil, Lexapro and Effexor. It also is significant to note that Powers has repeatedly complained of feelings of fatigue and malaise, which his health care providers attributed to either his hypothyroidism or his history of hepatitis B, but which also could be symptoms of depression.

Powers's counsel, however, provided uncontradicted evidence to the Appeals Council which shows that Powers suffered from depression so severe by August 13, 2007, that he was hospitalized for inpatient psychiatric treatment due to thoughts of suicide. (R. at 539.) Powers's GAF score at the time of his admission was listed at only 30, (R. at 541), which indicates serious impairment in communication or judgment or an inability to function in almost all areas. Powers was diagnosed with major depression, single episode, severe, without psychosis. (R. at 541.) At the time of his admission, Powers reported that he had been feeling depressed for the previous "several months, possibly longer." (R. at 529.) He also reported severe depression for the previous eight months, with thoughts of suicide over the previous six months. (R. at 536.)

Despite this additional evidence, the Appeals Council conducted no further analysis of Powers's mental impairments and the effect they would have had on his work-related abilities at the time of the ALJ's decision on June 26, 2007. It also is significant to note that each of the assessments of Powers's mental work-related abilities contained in the record were performed prior to this period of severe depression. It does not appear that any of the mental health professionals considered

a diagnosis of depression or its effects on Powers's work-related abilities. That being the case, it would appear appropriate to remand Powers's claim to the Commissioner for further consideration of the effects of his depression on his work-related abilities.

On remand, it also appears that the Commissioner should consider the additional evidence presented to the Appeals Council regarding Powers's back impairment. The ALJ found that Powers suffered from arthritis/degenerative disc disease. (R. at 18.) Powers's counsel presented evidence to the Appeals Council in the form of a report of a diskogram performed November 15, 2007, which showed that Powers might suffer from a herniated disc. (R. at 582.) This evidence is significant in light of the fact that most of the radiologic testing prior to this date suggested that Powers suffered from, at most, bulging discs. The only evidence before the ALJ showing the possibility of a herniated disc was an April 23, 2007, lumbar MRI showing mild disc extrusion at L1-2. (R. at 537.) Oddly, the ALJ makes no mention of this evidence in his analysis of the credibility of Powers's complaints of disabling pain. Additional evidence that Powers suffered from a herniated disc could substantiate his complaints of constant disabling pain. Again, the Appeals Council performed no analysis of this evidence in light of the other evidence record.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.   Substantial evidence does not exist to support the ALJ's finding as to Powers's residual functional capacity;

-33-

2.     Substantial evidence does not exist to support the ALJ's finding as to Powers's physical residual functional capacity; and

3.     Substantial evidence does not exist to support the ALJ's finding that Powers was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Powers's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the final decision of the Commissioner denying benefits and remand Powers's claim to the Commissioner for further consideration.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and

-34-

recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     This 7th day of November 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE